**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

**Case No.**

TRUDY REYNOLDS, individually and on behalf
of all others similarly situated,

                Plaintiff,

    v.

USHEALTH ADVISORS, LLC, a Texas limited
liability company; MICHAEL SMOOT,
individually; and DONALD DENTE,
individually,

                Defendants.
_____/

**CLASS ACTION COMPLAINT**

**I. PRELIMINARY STATEMENT**

1. Plaintiff Trudy Reynolds ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Plaintiff alleges that Defendant Michael Smoot ("Defendant Smoot") sent her and other potential class members automated telemarketing calls without her prior express written consent. Defendant Smoot did so pursuant to an agreement with USHealth Advisors, LLC ("USHealth") and Donald Dente, who hired him to generate new business, and did so with USHealth's knowledge that he would be telemarketing.

3. Because the call to Plaintiff was transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received illegal telephone calls.

4. A class action is the best means of obtaining redress for Defendants' illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## II. PARTIES

5. Plaintiff Trudy Reynolds is a citizen of Florida, residing in Broward County, Florida.

6. Defendant USHealth Advisors, LLC is a Texas limited liability company. Its principal place of business is 300 Burnett Street, Suite 300, Fort Worth, Texas, 76102. Defendant is registered to do and is doing business in Florida and throughout the United States.

7. Defendant Michael Smoot is a citizen of Arizona, residing in Maricopa County, Arizona. Defendant Smoot directly and personally participated in, directed, and/or authorized the statutory violations alleged herein. Defendant Smoot is, and all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

8. Defendant Donald Dente is a citizen of Florida. Defendant Dente directed and/or authorized the statutory violations alleged herein. Defendant Dente is, and all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## III. JURISDICTION & VENUE

9. This Court has subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's TCPA claims arise under the laws of the United States, specifically 47 U.S.C. § 227.

10. This Court has personal jurisdiction over Defendants because they have submitted to Florida jurisdiction by doing business in this state, and the wrongful acts alleged in this Complaint were committed, in part, in Florida. Furthermore, Plaintiffs allege that Defendants committed a tort in the State of Florida through their violation of the TCPA, and the commission of a tort in Florida, where the injury was suffered in Florida, is sufficient to confer personal jurisdiction under the Florida long-arm statute.

11. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were made into this District, and several potential class members reside in this District, including Plaintiff.

### IV. STATUTORY BACKGROUND OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 47 U.S.C. § 227

12. In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

13. The TCPA regulates the use of automated telephone equipment, or "autodialers."

14. Specifically, the TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 (¶ 165) (2003).

16. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number are permitted only if the calls

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

are made with the "prior express consent" of the called party. *See In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, Declaratory Ruling, 23 F.C.C. Rcd. 559, 564-65 (¶ 10) (2008) ("2008 FCC Declaratory Ruling").

17. Additionally, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

18. In its January 4, 2008 ruling, the FCC reiterated that "a company on whose behalf a telephone call is made bears the responsibility for any violations." 2008 FCC Declaratory Ruling (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

19. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, CG Docket No. 11-50, Declaratory Ruling, 28 F.C.C. Rcd. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

20. The FCC has instructed that sellers, such as USHealth, may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent'

marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 F.C.C. Rcd. at 6588 (¶ 37) (internal citations omitted).

21. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 F.C.C. Rcd. at 6586 (¶ 34).

22. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

23. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 F.C.C. Rcd. at 6592 (¶ 46).

24. The FCC also states in its May 2013 FCC Ruling that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## V. FACTUAL ALLEGATIONS

A. **Factual Allegations Regarding Plaintiff**

25. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

26. On July 16, 2015, Plaintiff received an automated telemarketing call on her cellular telephone number, (954) 683-XXXX, from Defendant.

27. The call consisted of a prerecorded message marketing USHealth's products.

28. The call was received on Plaintiff's cellular telephone and when the message starting playing, the recipient hung up.

29. Plaintiff did not consent to receive the telephone call from Defendants.

30. Plaintiff has never done business with Defendants.

31. Plaintiff did not provide prior express consent to receive automated and/or prerecorded calls on her cellular telephone from, or on behalf of, Defendants.

32. Plaintiff's privacy has been violated by the above-described calls from, or on behalf of, Defendants, and they constitute a nuisance as they are annoying and harassing.

33. Defendants are responsible for making the above-described automated and/or prerecorded call.

34. Defendants have made a significant number of automated and/or prerecorded calls to persons on their cellular telephones in Washington and throughout the entire United States.

35. Multiple facts indicate that the telemarketing calls made by Defendant Smoot, including the above described call to Plaintiff, were placed through an "automatic telephone dialing system," as defined in 47 U.S.C. § 227(a)(1), including:

    a. The difference in geographic location between Plaintiff and Defendant Smoot indicates that calling was done through a nationwide *en masse* telemarketing campaign; and

    b. The use of a prerecorded message to deliver the call, as it would be illogical to use a prerecorded message if each of the calls were hand-dialed.

36. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were subjected to annoying and harassing calls that constitute a nuisance, and they were charged for incoming calls. The calls also occupied Plaintiff's and all members of the Class' cellular telephone lines from legitimate communication.

**B.  Factual Allegations Regarding Defendants**

37. USHealth is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

38. USHealth is a national health insurance distribution company, which "sells individual health coverage and supplementary [insurance] products . . . to America's self-employed, small business, and individual insurance market." *See* http://www.ushacareers.com/NewsReader.aspx?id=25 (last visited May 2, 2017).

39. USHealth hired Defendant Dente to increase its volume of business, giving him authority to find individuals who could increase their revenues.

40. Defendant Smoot is in the business of call center operations and inside sales management. *See* https://www.linkedin.com/in/michael-smoot-061a1a58 (last visited May 2, 2017).

41. Defendant Dente hired Defendant Smoot on USHealth's behalf, and with its knowledge.

42. Following Defendant Dente's recommendation, USHealth contracted with Defendant Smoot to increase the volume of its customers.

43. Defendant Smoot's strategy for increasing the volume of potential customers involved the use of ATDS equipment and automated and prerecorded messages to solicit business.

44. This strategy of using prerecorded telemarketing campaigns to solicit business was determined to be a cost-effective way to reach as many new potential customers as possible, while saving the costs of having live telemarketers contact each individual.

45. USHealth is directly liable for the telemarketing calls made by Defendant Smoot because it actively participated in those calls through the guidelines it required Defendant Smoot to follow, including limiting geographically where he could make calls to solicit business. Florida was one of the geographical locations, or territories, that he was permitted to call.

46. USHealth knowingly and actively accepted business that originated through the illegal telemarketing calls from Defendant Smoot.

47. USHealth maintains interim control over its agents' actions, both as to telemarketing and other activities, by directing the content of their agents' advertising as well as approving the scripts used.

48. USHealth knew (or reasonably should have known) that Defendant Smoot was violating the TCPA on its behalf, and failed to take effective steps within its power to force the telemarketer to cease that conduct.

49. By hiring Defendant Smoot to make calls on behalf of its agents to generate new business, USHealth "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency. Similarly, by accepting these contacts, Defendant Smoot "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of USHealth, as described in the Restatement (Third) of Agency. Defendant Smoot is an agent of USHealth.

## VI. CLASS ACTION ALLEGATIONS

50. <u>Class Definition</u>. Pursuant to CR 23(b)(2) and (b)(3), Plaintiff brings this case as a class action on behalf of a National Class defined as follows:

> All persons within the United States who received a non-emergency telephone call from, or on behalf of, USHealth, placed to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice at any time four years prior to the filing of this Complaint through the date of trial.

Excluded from the Class are Defendants, any entities in which Defendants have a controlling interest or that has a controlling interest in USHealth, the Defendants' agents and employees, and

Defendants' legal representatives, assignees, and successors. Also excluded are the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

51.   <u>Numerosity</u>. The Class is so numerous that joinder of all members is impracticable. On information and belief, Plaintiff alleges that the Class has more than 100 members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

52.   <u>Commonality</u>. There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

   a.   Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS and/or artificial or prerecorded voice;

   b.   Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS and/or artificial or prerecorded voice, thus entitling Plaintiff and the Class to treble damages;

   c.   Whether Defendants are liable for ATDS generated and/or automated or prerecorded calls promoting USHealth's products or services made by Defendants' affiliates, agents, and/or other persons or entities acting on Defendants' behalf; and

   d.   Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf should be enjoined from violating the TCPA in the future.

53.   <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

54. <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and TCPA class actions. Plaintiff and its counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor its counsel has interests that are contrary to or that conflict with those of the proposed Class. Additionally, Plaintiff is a member of the Class.

55. <u>Predominance</u>. Defendants have engaged in a common course of conduct toward Plaintiff and members of the Class. The common issues arising from this conduct that affect Plaintiff and members of the Class predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

56. <u>Superiority</u>. A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendants to comply with the TCPA. The interest of individual members of the Class in individually controlling the prosecution of separate claims against Defendants is small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

57. <u>Injunctive and Declaratory Relief is Appropriate</u>. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis.

## VII.  FIRST CLAIM FOR RELIEF
### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))

58.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

59.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

60.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

61.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

## I.  SECOND CLAIM FOR RELIEF
### (Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))

62.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

63.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency

purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

64. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiff and members of the Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on its own behalf and on behalf of the members of the Class, prays for judgment against Defendants as follows:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. That the Court enter a judgment permanently enjoining the Defendants from engaging in or relying upon telemarketing, or, alternatively, from engaging in or relying upon telemarketing that violates the TCPA;

F. That, should the Court permit Defendants to engage in or rely on telemarketing, it enter a judgment requiring them to adopt measures to ensure TCPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that the Defendants comply with those measures;

G. That the Court enter a judgment awarding any other injunctive relief necessary to ensure the Defendants' compliance with the TCPA;

H. That the Court enter a judgment finding that Defendants are jointly and severally liable to Plaintiff and all members of the Class for all violations arising from the calls complained of herein;

I. That Defendants and their affiliates, agents, or anyone acting on their behalf, be immediately restrained from altering, deleting, or destroying any documents or records that could be used to identify class members;

J. An award to Plaintiff and the Class of damages, as allowed by law;

K. An award to Plaintiff and the Class of attorneys' fees and costs, as allowed by law and/or equity;

L. Leave to amend this Complaint to conform to the evidence presented at trial; and

M. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## IX. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 3rd day of June, 2017.

SCOTT D. OWENS, P.A.

By: /s/ Scott D. Owens (No. 597651)
Scott D. Owens (No. 597651)
Patrick C. Crotty (No. 108541)
3800 South Ocean Drive, Suite 235
Hollywood, Florida 33019
Telephone: (954) 589-0588
Facsimile: (954) 337-0666
Email: scott@scottdowens.com
Email: patrick@scottdowens.com

Matthew P. McCue, Esq., *Subject to Pro Hac Vice*
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077
Email: mmccue@massattorneys.net

Beth E. Terrell, *Subject to Pro Hac Vice*
Jennifer Rust Murray, *Subject to Pro Hac Vice*
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300

Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528
Email: bterrell@terrellmarshall.com
Email: jmurray@terrellmarshall.com

*Attorneys for Plaintiff*