**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 0:17-cv-61125-COOKE/Goodman**

TRUDY REYNOLDS, individually and on behalf of all other similarly situated,

Plaintiff,

v.

USHEALTH GROUP, INC., a Delaware Corporation; USHEALTH ADVISORS, LLC, a Texas limited liability company; MICHAEL SMOOT, individually; FLOYD T. HERNDON, individually; and DONALD DENTE, individually,

Defendants.
_______________________________________/

**USHEALTH GROUP, INC.'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant USHEALTH GROUP, INC. ("UHG") files this Reply in Support of its Motion to Dismiss for Lack of Personal Jurisdiction, and in support hereof, states as follows:

## I. INTRODUCTION

UHG had no reason to know about the calls at issue or the people who allegedly made them; it is a separate and distinct entity from USHEALTH Advisors, LLC ("ADVISORS"), and does not know or have a relationship with any of the independent contractors allegedly involved or anyone else in the state of Florida. Prior to receiving a solicitation letter from Plaintiff's counsel, Plaintiff had never heard of UHG.[1] By her own admission, she hung up as soon as she heard a recording – she did not hear anything about UHG or even USHEALTH Advisors, LLC ("ADVISORS").[2] The Response to the Motion to Dismiss fails to proffer any evidence from the Plaintiff that she ever knew of or heard of either UHG or ADVISORS; she didn't. She was told, falsely, by a lawyer, that she received a "telemarketing call on her cell phone promoting [ADVISORS]."[3] Indeed, the transcripts of the "prerecorded messages" allegedly at issue in this case show that there was no mention made of "USHealth". In fact, the evidence adduced in discovery to date indicates the call might have even been related to home security services that are wholly unrelated to UHG or ADVISORS.

This case is about the lead generation services of Defendant Michael Smoot through his lead generation company GSI Global, Inc. ("GSI").[4] This case is not about any "lead generation" or telephone calls made by any ADVISORS independent insurance agency. Plaintiff

[1] Plaintiff's Response to USHEALTH Advisors, LLC's First Set of Interrogatories (Responses to Nos. 3 and 7), attached hereto as **Exhibit A**, at Interrogatory No. 7.
[2] *Id.* at Plaintiff's Response to Interrogatory No. 3 (at Interrogatory No. 3 ("Mr. Smoot sent Plaintiff an automated, prerecorded call…. When the prerecorded message started playing, Plaintiff hung up."); ECF 36, ¶30.
[3] Attached hereto as **Exhibit B** is a letter Plaintiff's attorneys sent to Plaintiff.
[4] It was clearly a strategic decision by Plaintiff's counsel not to name GSI, the entity that was actually conducting the lead generation with which Plaintiff takes issue.

and her lawyers know that and, despite the efforts they undertake to stretch and obfuscate the facts, Mr. Smoot put any alternative contention to rest at his deposition on November 6, 2017.[5] He testified clearly and unequivocally that GSI was hired by the Tim Herndon Insurance Agency, and that GSI never made any calls at the direction of or with the knowledge of either ADVISORS or UHG. Ex. C, pp. 10:22-23, 11:1, 11:7-19. Mr. Smoot was not an independent insurance agent of ADVISORS at the time he was conducting business through GSI, and not a single call was made via ATDS or with prerecorded messages once Mr. Smoot became a licensed insurance agent. *Id.* at 337:14-19. More importantly to this motion, Mr. Smoot acknowledged that he never had any relationship whatsoever with UHG, and never placed a single call on behalf of UHG. *Id.* at p. 11; *id.* at p. 334 (confirming Smoot did not learn about UHG or ADVISORS until after the alleged calls made through GSI had been completed).

Plaintiff's Response fails to satisfy the evidentiary burden that shifted to her with the filing of the Motion to Dismiss and accompanying evidence. There is simply nothing to show that UHG has made any contact with Plaintiff or with anyone in the state of Florida. The "evidence" Plaintiff attached to her Response is not from Plaintiff, is unrelated to her claims, and doesn't prove anything. Plaintiff's Response provides and repeats nothing more than the conclusory allegation that ADVISORS is UHG's "agent", and the "evidence" is nothing more than an attorney attesting to printouts of a website with UHG's logo. Although subsidiaries of UHG provide products that are sold by ADVISORS, that fact alone cannot subject UHG to personal jurisdiction in this Court. That conclusory allegation does not meet the standards of "agency" required to find the necessary minimum contacts for personal jurisdiction to be found over UHG. And that conclusory statement does not change the actual facts in this case, i.e., that GSI was retained by the Herndon Agency – and not UHG or ADVISORS - as a lead generation

[5] Attached hereto as **Exhibit C** are relevant portions of Defendant Smoot's deposition transcript.

service. Moreover, the Herndon Agency does not have a relationship with either UHG or ADVISORS.

No evidence has been presented to this Court that ADVISORS, let alone UHG, had anything to do with that relationship or the GSI calls. In fact, the actual undisputed testimony of Mr. Smoot unequivocally demonstrates that neither UHG nor ADVISORS had any knowledge of, nor were they involved in, the alleged calls at issue in this case. Ex. C, pp. 337-342. Regardless, for Plaintiff's jurisdictional theory to succeed, even if the facts were as they conclusorily allege, the law requires that ADVISORS be the "alter-ego" of UHG to be subject to personal jurisdiction because of ADVISORS's actions, and Plaintiff has provided no evidence of or argument about that whatsoever. Contrary to Plaintiff's arguments in the Response, throughout its Motion to Dismiss UHG explained that it does not direct or control the activities of ADVISORS, has no relationship whatsoever with Mr. Smoot or GSI, and is a completely separate and distinct entity from ADVISORS. ADVISORS's contacts in Florida cannot be imputed to UHG by Plaintiff's conclusory and lumped allegations of "agency".

Plaintiff's attempt to deceive the Court that activity completely unrelated to UHG, and about which it had no knowledge, should subject UHG to personal jurisdiction is unavailing to say the least. Plaintiff essentially urges that UHG is subject to personal jurisdiction because Mr. Smoot and GSI were hired by the Herndon Agency, and that the Herndon Agency is owned and operated by Timothy Floyd Herndon, who is an independent insurance agent for ADVISORS.[6] The connection alleged is far too tenuous and distant, and the anemic "proof" offered is wholly

[6] *See* Defendant Floyd Herndon's Response to Plaintiff's Amended Statement of Claim (DE 69), p.2 ("[I]n May 2015, non-party Tim Herndon Insurance Agency, Inc. (not Herndon individually), entered into a business relationship with non-party GSI Global, Inc./Home Technologies, LLC (companies owned and managed by Smoot), whereby the Smoot companies promised to provide live transfers of 'double opt-in' leads."); *id.* ("With respect to this business arrangement, neither Herndon nor the Tim Herndon Insurance Agency were acting under the direction of USHA.").

deficient to satisfy the due process standards. This Court should summarily grant UHG's Motion to Dismiss.

## II. PLAINTIFF FAILS TO ESTABLISH PERSONAL JURISDICTION OVER USHEALTH GROUP, INC.

### A. Plaintiff's Evidence, Allegations, and Discovery Responses Do Not Show UHG is Subject to Jurisdiction

Plaintiff's counsel first became involved with the facts of this case after he was contacted by serial TCPA plaintiff Mark Fitzhenry (a TCPA plaintiff that these lawyers have represented in several other TCPA cases in the past), who allegedly received a call from GSI. Counsel filed a class action case on behalf of Fitzhenry in South Carolina, which eventually settled (individually) as is Mr. Fitzhenry's practice in this frivolous "strike" litigation that is solely designed to effectuate a personal settlement. Prior to settlement, however, Plaintiff's counsel used that lawsuit to send third party subpoenas and attempt to discover call data relating to the GSI telephone calls at issue. Following settlement, Plaintiff's counsel, presumably in search of a greater pay-out from UHG, filed another class action lawsuit on behalf of yet another alleged call recipient in federal court in the state of Washington (where neither UHG, ADVISORS, nor any related party is authorized to conduct business, and hence would have no interest in calling). UHG filed a motion to dismiss urging that personal jurisdiction did not exist in that case, and that case, too, eventually was dismissed.

After two prior failed attempts in two different Federal Courts on different coasts, Plaintiff's counsel continued their shopping for a plaintiff and a forum that might provide the personal jurisdiction necessary to, hopefully, win a huge class payout, in spite of the clear and uncontroverted evidence that neither UHG nor ADVISORS had any knowledge of nor involvement in the alleged call campaign that forms the basis of this lawsuit. To this nefarious end, in early 2017 Plaintiff's counsel began soliciting individuals, through a form letter from

Plaintiff's counsel, that was sent to individuals who didn't even know they had been called, much less damaged, to serve as plaintiffs in the Southern District of Florida. These solicitation letters were sent using the call data they obtained from the failed Fitzhenry litigation.

Plaintiff, Trudy Reynolds, was one of over a hundred (or up to one thousand) Fort Lauderdale residents who received a letter from Plaintiff's counsel advising that money could be made by suing "USHealth Advisors" for a telephone call allegedly placed on its behalf.[7] The Plaintiff, as the Court is well aware, alleges in her Complaint that she hung up on the prerecorded message that allegedly played on a random telephone number she may or may not have answered back in July of 2015. DE 36, ¶30. Plaintiff's interrogatory responses demonstrate that her knowledge of anything regarding UHG and ADVISORS as related to the allegations of the lawsuit came from her attorneys, and not from her own personal knowledge, as the alleged calls in this matter do not identify either UHG or ADVISORS. Ex. A.

Plaintiff does not, because she cannot, allege that she heard either UHG or ADVISORS referenced on the alleged prerecorded message that her lawyers told her played on the call she received (which she ended only seconds after answering). The Amended Complaint simply alleges: "The call was received on Plaintiff's cellular telephone and when the message starting (sic) playing, the recipient hung up." DE 36, ¶30. Based on the allegations and the discovery received from Plaintiff after her Response was filed, it is likely that Plaintiff has no recollection whatsoever of the alleged telephone call. In fact, the call to Plaintiff might not have included any reference to healthcare products at all. There is evidence that the calls allegedly placed by GSI may have included calls referencing home security products that are wholly unrelated to

[7] The letter Plaintiff's counsel Scott Owens sent to Plaintiff is attached hereto as Exhibit B. Plaintiff recently produced a spreadsheet listing 1,000 other Broward County residents, and produced 100 similar solicitation letters, suggesting they may have contacted hundreds of others to act as a class action representative. *See also* Exhibit A, Response No. 7.

either UHG or ADVISORS, and Plaintiff may have even received one of those calls. Ex. C, pp. 282-286. Importantly, Plaintiff does not allege any recollection of what she heard on the call.

Even if the call Plaintiff allegedly received included a prerecorded message referencing healthcare, that recording did not make any mention of UHG or ADVISORS. If the call occurred, and if it referred to health insurance, according to Mr. Smoot's uncontroverted testimony, it would have stated:

> Hello, this message is for anyone looking for affordable health insurance coverage. If you are between the ages of 30 to 64 years old, and of average health, [y]ou qualify for private, low cost health insurance, [w]here you have the power to choose the doctors and hospitals that you want. So if your one of the millions who employer does not contribute to your health insurance coverage, press 1 now to be connected to a local licensed agent now. To be deleted from this list press 9.[8]

The calls referencing home security products utilized a prerecorded message which stated:

> Attention homeowners. Home burglary is on the rise. Every 11 seconds a home is broken into. One out of 8 of those times a family is home during the intrusion. Protect your family and property today and we will pay for your state of the art equipment and installation. That's right; no money out of pocket. To speak with a live agent, press 1 now. To be deleted from this list, press 9.

Ex. C, p. 283. Rather than have Plaintiff submit a declaration explaining how UHG (or even ADVISORS) committed the alleged "tortious act", Plaintiff's counsel instead signed a declaration attached to the Response attesting to having viewed a website wherein ADVISORS's "agents" in Florida can be located. These allegations and "evidence", without more, do not establish the existence of personal jurisdiction over UHG in this lawsuit.

Plaintiff's Response fails to address any of UHG's argument in the Motion to Dismiss that nearly all of the allegations against it in the Amended Complaint are lumped together with allegations against ADVISORS. It is impossible to decipher from the vague and imprecise allegations how UHG was possibly involved in the alleged tortious conduct since UHG is an

[8] **Exhibit D**, PLFF 00037, a transcript of the alleged pre-recorded message.

entirely distinct business and had no relationship with GSI, the entity that the Herndon Agency (with which UHG maintains no relationship) allegedly engaged to place the alleged violative calls. Conclusorily claiming that ADVISORS is UHG's "agent", and therefore anything that ADVISORS does (such as enter into agreements and have relationships with various independent contractors who sell insurance who have no relationship with UHG), cannot be imputed to UHG for reasons of establishing personal jurisdiction. The law required Plaintiff to proffer evidence as to why *UHG* is subject to personal jurisdiction in Florida.[9] Since she failed to do that, the Motion must be granted.

**B. Florida's Long-Arm Statute and its Parent-Subsidiary Relationship with ADVISORS Does Not Subject UHG to Personal Jurisdiction in Florida**

UHG set forth evidence with its Motion to Dismiss that shows (1) it is a separate and distinct entity from ADVISORS, (2) it does not direct or control ADVISORS, and (3) ADVISORS is not UHG's alter-ego; it thus refuted any "agency" relationship for purposes of personal jurisdiction, contrary to Plaintiff's arguments. Plaintiff, however, failed to satisfy her burden of producing evidence to rebut UHG's proof. She continues to instead rest on the insufficient, conclusory allegation that ADVISORS is somehow UHG's "agent", and without any supporting evidence.[10] *See Polskie Linie Oceaniczne v. Seasafe Transport*, 795 F.2d 968 (11th Cir.1986) (*citing Electro Engineering Products Co., Inc. v. Lewis*, 352 So.2d 862 (Fla.

[9] As the Motion to Dismiss argued, the contacts of UHG must be analyzed – not the contacts of ADVISORS. No agency theory or alter-ego theory of personal jurisdiction is pleaded – nor is any such theory supported by evidence in Plaintiff's Response to the Motion to Dismiss.

[10] Throughout her Response, Plaintiff relies on an Eleventh Circuit case for purposes of its agency discussion, *Meier v. Sun International Hotels*, which was expressly overturned by the United States Supreme Court in 2014 in *Daimler*, as Justice Sotomayor recognized in her dissenting opinion. *Daimler AG v. Bauman*, 134 S. Ct. 746, 773, 187 L. Ed. 2d 624 (2014) ((Sotomayor, J., dissenting) ("Under the majority's rule, for example, a parent whose child is maimed due to the negligence of a foreign hotel owned by a multinational conglomerate will be unable to hold the hotel to account in a single U.S. court, even if the hotel company has a massive presence in multiple States. *See, e.g., Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264 (C.A.11 2002).")).

1977)) (after the burden shifts, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."); *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1343 (S.D. Fla.), *aff'd sub nom.*, 54 F. App'x 492 (11th Cir. 2002) (internal citation omitted) (emphasis added) ("A plaintiff must show that the subsidiary is merely an agent through which the parent company conducts business, '***or that the subsidiary's separate corporate status is formal only and without any semblance of individual identity.***' Stated simply, the parent company must have sufficient control over the actions of its subsidiary."). But even if ADVISORS was considered UHG's "agent", it does not mean that UHG is subject to personal jurisdiction in Florida for the claims set forth in Plaintiff's Complaint. As the evidence reveals, the alleged telephone calls at issue were not made by or on behalf of ADVISORS – so the existence of a supposed agency relationship (between a parent (UHG) and subsidiary (ADVISORS)) has nothing to do with the issues in this case such that it would subject UHG to personal jurisdiction for some calls made by GSI – a lead generation company with which it has no relationship whatsoever and never did.

Plaintiff wholly fails to address the legal standard that to subject UHG to jurisdiction here, she must definitively establish the high standard that ADVISORS is UHG's alter-ego, or that UHG essentially controls the business operations of ADVISORS. *Gen. Cigar Holdings, Inc.*, 205 F. Supp. 2d at 1343 ("[T]he parent company must have sufficient control over the actions of its subsidiary."). There is simply no evidence to support any such contention. The uncontroverted evidence establishes that ADVISORS and UHG are distinct corporate entities, and Plaintiff cannot subject UHG to jurisdiction merely by claiming through conclusory allegations that ADVISORS is UHG's "agent".

This Court has explained that for personal jurisdiction to exist over the parent corporation, it must find the subsidiary is its alter-ego such that the corporate veil can be pierced. To pierce the corporate veil, "a plaintiff must show: (1) that the subsidiary is a mere instrumentality of the parent; and (2) improper conduct." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1289 (S.D. Fla. 2014) (citing *Cross Country Home Servs., Inc. v. Home Serv. USA Corp.*, No. 08–61456, 2010 WL 55439 at *3 (S.D.Fla. Jan. 6, 2010)) (Cooke, J.). Under Texas law where ADVISORS is incorporated, veil-piercing requires a Plaintiff to prove actual or constructive fraud. *See, e.g.*, *Zhang v. Monroe*, No. 6:13-CV-811, 2017 WL 108311, at *9 (E.D. Tex. Jan. 11, 2017). Plaintiff's Response fails to mention any alter-ego theory, piercing the corporate veil, or even that UHG controls ADVISORS's business operations. Without actual proof of this in response to the Motion to Dismiss, compounded with her failure to allege any such theory in the Amended Complaint, Plaintiff has not met her burden of showing UHG is subject to personal jurisdiction in the Southern District of Florida.

Similarly, Plaintiff fails to address in her Response all of the lumped and wholly deficient allegations in the Amended Complaint, all of which fail to definitively state any alleged wrongful conduct on the part of UHG. Instead, Plaintiff does nothing more than point to allegations such as claiming ADVISORS "is the marketing arm" of UHG, in addition to and her wholly conclusory allegations of agency. Her attempts to distinguish the *Rogers* case should be disregarded; that case is fully applicable, finding the plaintiffs there failed to meet their burden by providing evidence to controvert the defendants' declarations that they operated as separate businesses. *Rogers v. Nacchio*, No. 05-60667-CIV, 2006 WL 7997562, at *6 (S.D. Fla. June 6, 2006), *aff'd in part, appeal dismissed in part*, 241 F. App'x 602 (11th Cir. 2007). And her attempts to equivocate *Bagg* to this case should similarly be disregarded. That case involved an

alleged unlawful facsimile transmission which contained an advertisement for "USHealth Advisors", whereas here Plaintiff's allegations in the instant case are about a call she admittedly didn't hear, and that, regardless, didn't mention any Defendant by name. More fundamentally, the alleged calls at issue here were not made by or on behalf of UHG, but instead were allegedly made by GSI on behalf of the unrelated Herndon Agency (and not ADVISORS and not even any ADVISOR independent insurance agency). This fails to satisfy any logical connection to personal jurisdiction, let alone "purposeful availment" as required for personal jurisdiction. Moreover, UHG disputes the court's decision in *Bagg* which plainly relies on unsubstantiated TCPA vicarious liability analysis that, unlike here, and did not require the Plaintiff to make the necessary evidentiary showing applicable to a personal jurisdiction determination.

**C. <u>Plaintiff Fails to Establish Constitutional Due Process or that UHG Has Sufficient Minimum Contacts</u>**

Plaintiff's anemic arguments regarding why due process standards would not be offended by the Court's exercise of personal jurisdiction over UHG are similarly controverted, conclusory and weak. All of Plaintiff's arguments in this section stand on her conclusory assertion that ADVISORS is nothing more than an agent of UHG, which has been refuted by UHG's evidence, and is directly contrary to precedent established by no less than the Supreme Court of the United States, to wit: "For a State to exercise jurisdiction consistent with due process, the defendants' suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). "[T]he relationship must arise out of contacts that the 'defendant *himself* ' created with the forum State." *Id.* at 1122 (emphasis in original) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In this case, Plaintiff does not include a single allegation or piece of evidence that UHG itself has a relationship with the state of Florida or

anyone in Florida, nor that it was involved in any manner with the alleged call campaign giving rise to the alleged causes of action.

Plaintiff continues to add to her unsupported arguments claims such as "[a] 'direct causal relationship' exists between [UHG], Florida, and this action". Response, p. 9. Plaintiff's entire discussion of the Calder Effects Test is senseless; the Amended Complaint alleges that Mr. Smoot placed the call (even though the uncontroverted evidence establishes that, if any such call was made, GSI (with whom UHG had no knowledge or relationship) was the lead generation company, and GSI only had a relationship with the Herndon Agency (and neither UHG nor ADVISORS). The notion that UHG can be subject to personal jurisdiction because ADVISORS is its "agent" is not established by any record evidence. Plaintiff's allegations, contrary and expressly negated by the sworn testimony of Mr. Smoot, are not sufficient to establish purposeful availment under the Effects Test; as a matter of fundamental due process, Plaintiff must allege how UHG was involved with the campaign, or how it managed to direct or control the company that was responsible for placing the allegedly offensive telephone calls. *See, e.g.*, *Yellow Pages Photos, Inc. v. Ziplocal, LP*, No. 8:12-CV-755-T-26TBM, 2012 WL 2952452, at *7 (M.D. Fla. July 19, 2012) (finding no personal jurisdiction over foreign parent corporation because complaint failed to sufficiently allege agency relationship or anything more than vicarious liability); *Home Design Servs., Inc. v. David Weekley Homes, LLC*, 2007 WL 1080001, at * 3 (M.D. Fla. 2007) (no personal jurisdiction over individual shareholder of corporation because complaint was devoid of allegations sufficient to warrant piercing corporate veil). UHG never purposefully availed itself of the laws or benefits of the state of Florida. The "interactive website" Plaintiff references links interested parties to ADVISORS's agents who sell products in the state of Florida; it simply links consumers to independent insurance agencies and,

importantly, there is no evidence that Plaintiff ever visited the website. Referencing that website does not establish that UHG and ADVISORS are alter-egos or "agents" sufficient to pierce the corporate veil. That is the required analysis for personal jurisdiction purposes.

The burden of being haled into court on UHG greatly exceeds any purported burden Plaintiff's lawyers can dream up about Plaintiff's "interest in obtaining effective relief". Plaintiff alleges she received a call from GSI and also alleges she immediately hung up! She provides no evidence about what she heard when she answered the call or how she was, in fact, directly contacted by UHG; she wasn't. The Plaintiff wholly fails to meet her burden to demonstrate how UHG has purposefully availed itself to Florida. The uncontroverted facts demonstrate, as a matter of law, that Plaintiff was never contacted by UHG, and never heard of UHG until she received the solicitation letter from her attorneys. Plaintiff can obtain "effective relief" through litigating this case with the parties who have submitted themselves to jurisdiction before the Court, and were involved and knew about with the alleged conduct at issue unlike UHG.

## III. CONCLUSION

UHG is not subject to personal jurisdiction in Florida as it is not subject to Florida's Long-Arm Statute, and otherwise lacks sufficient minimum contacts with Florida to satisfy Due Process. Plaintiff has failed to come forward with evidence to refute UHG's sworn testimony that it is a separate and distinct entity from ADVISORS. Plaintiff has also failed to come forward with any testimony to refute the sworn testimony of Mr. Smoot. Accordingly, this Court should grant this Motion and dismiss Plaintiff's Amended Complaint against UHG for lack of personal jurisdiction.

Respectfully submitted, this 20th day of November, 2017.

GREENSPOON MARDER, P.A.
*/s/ Jeffrey A. Backman*

RICHARD W. EPSTEIN
Florida Bar No. 229091
Richard.Epstein@gmlaw.com
JEFFREY A. BACKMAN
Florida Bar No. 662501
Jeffrey.Backman@gmlaw.com
LAUREN SHOEMAKE
Florida Bar No. 94316
Lauren.Shoemake@gmlaw.com
200 East Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
Tel: (954) 491-1120
Fax: (954) 213-0140

*Attorneys for Defendant USHealth Group, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 20, 2017, I electronically filed the above document using CM/ECF, and it is being served this day on all counsel of record and *pro se* parties identified below:

Scott D. Owens
Patrick C. Crotty
SCOTT D. OWENS, P.A.
3800 South Ocean Drive, Suite 235
Hollywood, Fl 33019
(954)589-0588; (954)337-0666-fx
scott@scottdowens.com
patrick@scottdowens.com
*Attorneys for Plaintiff*

Edward A. Broderick, *Pro Hac Vice*
BRODERICK & PARONICH, P.C.
99 High Street, Suite 304
Boston, MA 02110
(617)738-7080
ted@broderick-law.com
*Co-Counsel for Plaintiff*

Beth E. Terrell, *Pro Hac Vice*
Jennifer Rust Murray, *Pro Hac Vice*
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, WA 98103-8869
(206)816-6603; (206)350-3528-fx
bterrell@terrellmarshall.com
jmurray@terrellmarshall.com
*Co-Counsel for Plaintiff*

Matthew P. McCue, Esq. *Pro Hac Vice*
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA 01760
(508)655-1415; (508)319-3077
mmccue@massattorneys.net
*Co-Counsel for Plaintiff*

Michael Smoot
800 River Terrace
Prescott, WI 54021-7043
(623)261-4458
michaelsmootaz@gmail.com
*Appearing Pro Se*

Peter S. Baumberger
Michael F. Suarez
KUBICKI DRAPER, P.A.
400 N. Ashley Drive
Tampa, FL 33602-4318
(813)314-1155
psb@kubickidraper.com
psb-kd@kubickidraper.com
mfs@kubickidraper.com
*Attorneys for Defendant Donald Dente*

Scott W. Atherton
Terence M. Mullen (Michael e-mail)
Brittany A. Tarazona
Atherton McAuliffe & Reeder, PA
224 Datura St., Suite 815
West Palm Beach, FL 33401
(561)293-2530; (561)293-2593-fx
scott@athertonlg.com
e-service@athertonl.com
michael@athertonlg.com
brittany@athertonlg.com
*Attorneys for Defendant Floyd Herndon*

*Jeffrey Backman*
JEFFREY A. BACKMAN